# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF VERMONT

| | |
|---|---|
| JOHN CURRY, | : |
| | : |
|     Plaintiff, | : |
| | : |
|     v. | :   Case No. 2:18-cv-208 |
| | : |
| MICHAEL KEEFE, TODD MAYER, and | : |
| EVAN MARTIN, | : |
| | : |
|     Defendants. | : |

## OPINION AND ORDER

### ECF 52, 57, 69

Plaintiff John Curry ("Curry") brings this action against Defendants Michael Keefe ("Keefe"), Todd Mayer ("Mayer"), and Evan Martin ("Martin"), for violating his rights under the United States Constitution and the Vermont Constitution, as well as state-law claims of assault and battery and intentional infliction of emotional distress. Now before the Court is Defendants' Motion for Summary Judgment on all claims. For the reasons set forth below, the Court **grants** summary judgment. The Court also **grants** Defendants' Motion to Strike Statement of Undisputed Material Facts to Response in Support of Motion. Finally, in light of the grant of summary judgment, the Court **denies** as moot Defendants' Motion to Compel Plaintiff to Respond to Discovery.

## Factual Background

### A. Plaintiff's Supplemental Statement of Undisputed Facts

Curry has submitted his own Statement of Undisputed Material Facts as an attachment to his Opposition to Defendants' Motion for Summary [Judgment]. ECF No. 65-2. However, as Defendants point out, under Local Rule 56(b) Curry should have submitted a concise statement of disputed material facts instead of his own Statement of Undisputed Material Facts, and Defendants have therefore moved to strike Curry's Statement of Undisputed Material Facts. ECF No. 69.[1]

Pursuant to Fed. R. Civ. P. 56(e), a court may consider a fact "undisputed for purposes of the motion" for summary judgment "[i]f a party . . . fails to properly address another party's assertion of facts as required by Rule 56(c)[.]" *Id.* at (e)(2). The District of Vermont's Local Rule 56(b) provides that "[a] party opposing summary judgment . . . must provide a separate, concise statement of disputed material facts." *Id.* This requirement is logical because "a party's ability to withstand summary judgment depends on the existence of disputed facts, not undisputed ones," and therefore there is no need for the responding party to establish undisputed facts at this stage of the litigation. *Schroeder v. Makita Corp.*, No. 2:02-CV-299, 2006 WL 335680, at *4 (D. Vt. Feb. 13, 2006).

---

[1] Curry did not respond to this motion to strike.

Given these rules, the Court will not consider Curry's Statement of Undisputed Material Facts as such. However, though the Court will not consider Curry's Statement of Undisputed Material Facts as a list of undisputed material facts, to the extent that Curry's Response to Defendants' Motion for Summary Judgment identifies specific facts that are disputed in making arguments against summary judgment, or points out areas where the record does not support Defendants' Statement of Undisputed Material Facts, the Court will take these into consideration. *See Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 276 (D. Vt. 2013) ("In this case, the court will … disregard Plaintiff's additional facts unless it is clear from the parties' briefing that those facts are both material and undisputed.") Indeed, although Curry "has not directly responded to Defendants' identification of an undisputed fact," the Court "will not grant summary judgment by default" since "an opposing party's noncompliance with a procedural rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." *Moore v. Bitca*, No. 2:19-CV-00035, 2020 WL 5821378, at *3 (D. Vt. Sept. 30, 2020) (internal quotation marks omitted) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001)).

## B. Defendants' Statement of Undisputed Facts

### i.   Popolo Restaurant Incident

3

On October 6, 2015, Ann DiBernardo was at Popolo's restaurant in Bellows Falls. ECF No. 52-8 ¶s 2-4. She was told by a waitress that Curry appeared agitated and would not leave, and she assumed that he was intoxicated. *Id.* at 6. After the other patrons had left, she approached him and while they interacted he twirled his fork towards her face. *Id.* ¶s 7-9. She called Police Chief Ron Lake and told him that a man was at Popolo refusing to leave and had threatened her. *Id.* ¶ 10. Officers Keefe, Mayer, and Martin arrived within about a minute, at approximately 10pm. *Id.*; ECF No. 52-2 ¶3. Keefe, Mayer and Martin were all police officers employed with the Bellows Falls Police Department in October 2015. ECF No. 52-2 ¶1; ECF No. 52-4 ¶1; ECF No. 52-5 ¶1. Keefe wrote in his affidavit that he responded to Popolo "in connection with a report of a male refusing to leave the restaurant. The individual who made the complaint was a patron of the restaurant and sought police assistance at the request of restaurant staff." ECF No. 52-2 ¶3. Curry was then the only customer in the restaurant and the restaurant staff was attempting to close. ECF No. 52-4 ¶5. The restaurant manager told Martin that Curry would not leave and was acting strange. ECF No. 52-5 ¶4.

Keefe and Mayer approached Curry and told him that he was no longer welcome in the restaurant and that he needed to leave. ECF No. 52-2 ¶5. Curry responded that he would leave when he was

ready to and remained seated. *Id.* They asked him to leave again, again he refused, and then Keefe and Mayer put their hands on Curry and physically escorted him from the restaurant. ECF No. 52-2 ¶6; ECF No. 52-4 ¶5.

Outside the restaurant, Keefe gave Curry loud verbal commands to leave, but Curry called Keefe "Irish ethnic slurs." ECF No. 52-2 ¶7-8. The officers walked toward Curry while telling him to leave, but he initiated a chest bump into Keefe. *Id.* Keefe then used "soft empty hand control" to physically move Curry a distance down the sidewalk away from the restaurant. *Id.* at ¶9. This use of force did not injure Curry.[2] After more commands to leave the area, Curry left. He was not arrested. ECF No. 52-2 ¶10.

ii.  Griswold Drive Incident

Approximately three hours later, at 1:20am on October 7, 2015, Keefe observed Curry driving a car he recognized as Curry's distinctive blue Volkswagen. ECF No. 52-2 ¶11. At that time, Keefe knew that there had been recent complaints about Curry following women home after their night college classes to

---

[2] Although Curry does not directly dispute that he was not injured by the officers' actions taken at that time, he does say in his declaration that the open palm strikes caused him "both pain and unsteadiness on my feet" and he says that he told Defendants that his knee was injured and in a brace, and Keefe responded that he did not care. ECF No. 65-1 at ¶s 16-17.

their homes in the Griswold Drive neighborhood. *Id.* Keefe also
knew that Curry did not live in the Griswold Drive area. *Id.*

Curry turned onto Griswold Drive, and then stopped on the
side of the road. ECF No. 52-2 ¶14. Keefe activated his blue
lights and called for assistance. *Id.* Curry then got out of his
car and began walking in Keefe's direction. ECF No. 52-2 ¶15.
Keefe exited his cruiser and ordered Curry to remain in the car.
*Id.* Curry walked around his car and yelled that he had to "take
a piss" while Keefe continued to order him to get back in the
car. *Id.* Bellows Falls Village Ordinances prohibit any person
from urinating in a place which is in public view, so Keefe told
Curry he could not urinate on the side of the road. *Id.* ¶15-16.

Curry turned to face Keefe and did not obey his verbal
commands. *Id.* Keefe then "lightly pushed" Curry in the direction
of the driver's side of the car, telling him to get back into
the car. *Id.* ¶17. Curry responded by pushing Keefe in the chest.
*Id.* ¶19. Keefe told Curry he was under arrest for assaulting a
police officer and ordered him to put his hands behind his back,
but Curry backed away and swiped at Keefe's hands. *Id.* Keefe
grabbed Curry by the arm and brought him to the ground. *Id.* ¶19.
Keefe says that Curry continued to resist, kicking his knee and
leg up into Keefe's waist and chest, and grabbing at Keefe's
tie. *Id.* ¶21. The tie came off of Keefe's shirt. *Id.*

6

Mayer and Martin had now arrived on the scene, and ran up to assist Keefe. The three officers were trying to roll Curry onto his stomach to handcuff him. *Id.* Keefe then gave Curry approximately five closed fist strikes to his upper thigh and hip area. *Id.* ¶22. At this point, the officers were able to roll Curry onto his stomach and put him in handcuffs. *Id.* ¶22-23. Curry appeared to go limp and Mayer and Martin had to lift him to bring him to the cruiser. ECF 52-4 ¶18; ECF 52-5 ¶14.

Curry asked about his possessions while being placed in the cruiser but did not complain of any injury. ECF 52-5 ¶15. Nor did he complain of an injury during the drive. *Id.* ¶16. Once brought back to the police station, Curry said for the first time that he was injured. The officers called for an ambulance and he was transported to the Springfield Hospital Emergency Room. ECF 52-4 ¶21.

## Standard of Review

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The moving party bears the initial

burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has discharged its burden the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  In deciding a motion for summary judgment, the trial court's function "is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## Discussion

### I.   United States Constitution Violation Claims

In his Amended Complaint, Curry alleges that Defendants violated his rights under the Fourth and Fourteenth Amendment. ECF No. 23 at 8. Defendants now move for summary judgment, claiming protection under the doctrine of qualified immunity. In his response to the summary judgment motion, Curry does not mention or address qualified immunity. For the reasons set forth below, the Court finds that Defendants are entitled to qualified immunity for their actions during both incidents.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). When an
official raises qualified immunity as a defense, the court must
consider whether: "(1) . . . the official violated a statutory
or constitutional right, and (2) . . . the right was 'clearly
established' at the time of the challenged conduct." *Ricciuti v.
Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (internal quotation
marks omitted). The Supreme Court has "repeatedly told courts"
that they must not "define clearly established law at a high
level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742
(2011). Though a "case directly on point" is not necessary, for
a right to be clearly established "existing precedent must have
placed the statutory or constitutional question beyond debate."
*White v. Pauly,* 137 S. Ct. 548, 551 (2017) (per curiam). "In
other words, an official is immune from liability unless, under
the particular circumstances the official faced, any 'reasonable
offic[ial]' would have 'known for certain that the conduct was
unlawful' under then-existing precedent." *Liberian Cmty. Ass'n
of Conn. v. Lamont*, 970 F.3d 174, 187 (2d Cir. 2020) (quoting
*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017)). If the facts do
not show that the defendants' conduct violated plaintiffs'
constitutional rights, or if the right was not clearly
established at the time of the defendants' actions, then

9

qualified immunity attaches. *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014). "Qualified immunity is an affirmative defense, and the burden is on the defendant-official to establish it on a motion for summary judgment." *Bailey v. Pataki,* 708 F.3d 391, 404 (2d Cir. 2013)

   A. Popolo Restaurant Removal and Use of Force

   The Court finds that Defendants are entitled qualified immunity for their removal of Curry from the restaurant, because the facts taken in a light most favorable to Curry do not amount to a constitutional violation. Curry does not dispute that the following facts were apparent to Defendants when they arrived at Popolo's: (1) that he was the last patron in the restaurant; (2) that the staff were trying to close up, (3) that the manager of the restaurant told Martin that Curry would not leave and was acting strange. Nor does Curry dispute that DiBernardo called the police and told them that he would not leave and that she felt threatened by him. When faced with these undisputed facts, the Court finds that there is no showing that Defendants' conduct violated Curry's constitutional rights when they removed Curry from the restaurant and area. Curry appears to dispute whether from a legal standpoint Defendants were entitled to rely on information obtained from Ms. DiBernardo and the manager of Popolo's, but the Court does not find his argument persuasive. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)

("[I]t is well-established that a law enforcement official has
probable cause to arrest if he received his information from
some person, normally the putative victim or eyewitness."
(quotation marks omitted)).

Curry argues that no force should have been used against
him either inside or outside of Popolo's, but the Court finds
that Defendants are entitled to qualified immunity on the
excessive force claim as well. To prevail on an excessive force
claim brought under the Fourth Amendment, a plaintiff must show
that the officer's actions were objectively unreasonable, a
showing that will depend on "the facts and circumstances of
[the] particular case, including the severity of the crime at
issue, whether the suspect poses an immediate threat to the
safety of the officers or others, and whether he is actively
resisting arrest or attempting to evade arrest by flight."
*Graham v. Connor,* 490 U.S. 386, 396 (1989).

Here, though the officers did remove Curry from the
restaurant and the area by force, the Court finds that the
undisputed facts are not enough to show that the amount of force
used by the officers amounted to a constitutional violation.
Curry does not dispute that although the shoves caused him
"pain," his actual injuries were caused by the excessive use of
force on Griswold Drive and not inside or outside of Popolo's.
The amount of force in this case, up until the interactions at

11

Griswold Drive, is *de minimis* and under the circumstances the
Court finds that the use of *de minimis* force was not objectively
unreasonable. There is no constitutional violation. *See Romano
v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (stating that "[a]
*de minimis* use of force will rarely suffice to state a
constitutional claim" at least with regard to Eighth Amendment
excessive force claims); *Feliciano v. Thomann*, 747 Fed. Appx.
885, 887-88 (2d Cir. 2019) (to establish an excessive force
claim, plaintiff must show that defendant used more than *de
minimis* force); *Williams v. City of New York*, No. 05-cv-10230,
2007 WL 2214390, at *11-12 (S.D.N.Y. July 26, 2007) (finding
that injuries of scrapes and bruises and temporary discomfort as
a result of being maced were *de minimis* and not enough to state
a constitutional violation as a matter of law).

Even assuming that Curry's removal did result in a
constitutional violation, Curry has not and cannot show that his
rights were clearly established. This Court has located no
Supreme Court or Second Circuit case clearly establishing the
conduct under these particular circumstances. If anything, lower
courts in the Second Circuit point in the other direction. *See,
e.g., Grant v. County of Suffolk*, No. 2:15-cv-4781 (DRH)(GRB),
2018 WL 816242 at *8 (E.D.N.Y. Feb. 9, 2018) (finding "arguable
probable" cause and qualified immunity where defendant officers
"had reasonably trustworthy information sufficient to warrant a

person of reasonable caution in the belief that Plaintiff was being disruptive and should be removed from the restaurant" when they relied on the information provided by restaurant employees that Plaintiff was being disruptive, "even though Plaintiff was sitting quietly at the moment that Officers arrived," because "Plaintiff does not need to scream, to get in someone's face, or to cause a scene in order to be disruptive" (internal quotation marks omitted)).

B. Griswold Drive Interactions

i.  Basis to engage

Curry argues that Defendants had "no basis to engage" him on Griswold drive. However, the Court finds the following facts to be undisputed: (1) there was an incident at Popolo's earlier that night in which Curry refused to leave the restaurant and was described to Defendants as acting strange; (2) Keefe was aware of complaints by two local residents based on activities by Curry in the area; (3) the hour was late and there was no known reason for Curry to be in the area. Based on these undisputed facts, the Court agrees with Judge Hayes' assessment in the criminal trial proceeding that Keefe had reasonable suspicion to stop Curry and ask what he was doing and discourage him from unwanted contact with local residents. *See ECF No. 52-6 at 4.* These facts do not establish a constitutional violation. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119 (2000).

ii.  Excessive Use of Force

"Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)). It is now clearly established law in the Second Circuit that officers may not use gratuitous force against a restrained and unresisting arrestee. *See Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010) ("We do note that it was well established at the time of the underlying altercation that the use of entirely gratuitous force is unreasonable and therefore excessive" and thus "we presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee"); see *also Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir. 2018) ("It is clearly established that officers may not use a taser against a compliant or non-threatening suspect.").

Here, however, even Curry does not describe himself as a restrained and unresisting arrestee. He himself acknowledges that he was seized and "blue-lighted" by Keefe, and he never states that he did not hear Keefe's order to return to his vehicle. Instead, Curry disputes the lawfulness of Keefe's order

to stay in his vehicle. ECF No. 65 at 10. He also argues that he was merely defending himself when he resisted the officers, and that his efforts were "certainly minimal and unsuccessful as plaintiff was arrested at the scene[.]" *Id.* at 11. The Court finds that these are not genuine issues of material fact.

The Court has reviewed Defendant Keefe's cruiser video, and finds the following facts to be undisputed by Curry and corroborated by the video: (1) Curry ignored Keefe's orders to stay in the car and exited his car; (2) Curry walked around the back of his car towards the ditch on the side of the road, and appeared to be about to attempt to urinate; (3) Keefe shoves Curry against the car and appears to attempt to make an arrest; (4) Curry backed away from Keefe; (5) Curry shoved Keefe before being taken to the ground; (6) once on the ground, Keefe's punches were on Curry's leg, as Curry kicked his leg into Keefe's body. *See Scott v. Harris*, 550 U.S. 372 (2007). Even drawing all inferences for Curry, and even ignoring the video that does appear to show Curry shoving Keefe, Curry himself says that he attempted to protect himself and does not dispute that he was not obeying orders or resisting arrest. Curry offers no other insights into the constitutional right that he is alleging defendants to have violated, and he does not mention qualified immunity at all.

The Court finds that the facts do not establish a constitutional violation. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (internal quotation marks and citation omitted). Here, it was reasonable for the officers to use force to the degree that they did in attempting to restrain Curry, who was resisting arrest.

Furthermore, even assuming a constitutional violation, the Court finds that the use of force by Defendants in attempting to subdue Curry did not violate clearly established law. *See, e.g., Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) (finding officers shielded from liability by qualified immunity because it was not a clearly established Fourth Amendment violation where they repeatedly used pepper spray after warnings, kicked the plaintiff's legs out from under her to bring her to the ground, and pushed her head onto the pavement, after plaintiff repeatedly refused to follow the instructions of police officers who were attempting to apply handcuffs to accomplish an arrest); *Crowell v. Kirkpatrick*, 400 F. App'x 592,

595 (2d Cir. 2010) (summary order) (concluding that use of taser was objectively reasonable, and that there was no clearly established law saying otherwise, where plaintiffs "were actively resisting their arrest" and that officers were entitled to qualified immunity).

Curry asks the Court to take judicial notice of *Frost v. New York City Police Dep't*, 980 F. 3d 231 (2d Cir. 2020). The Court takes notice of the case but agrees with Defendants that it provides further support for finding that they were protected by qualified immunity. In *Frost*, the Second Circuit examined three separate instances of use of force at the summary judgment stage. In each incident, the Court considered the reasonableness of the force in light of the security issues, the threat perceived, and whether Frost was resisting. Here, as in some incidents considered in *Frost*, Curry was actively resisting by struggling with the officers as they tried to restrain him, and though this struggle "could have been gentler" the video footage "does not suggest that the officers' actions could reasonably be viewed as excessive." *Id.* at 256.

## II.  Abandoned Claims

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one claim and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003);

*see also Frantti v. New York*, 414 F. Supp. 3d 257, 291 (N.D.N.Y. 2019) (finding certain claims abandoned where plaintiff's opposition memorandum did not make an explicit argument against their dismissal). The Second Circuit has explained that:

> Generally, but perhaps not always, a partial response [to a motion for summary judgment] reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them. Moreover, preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses. Indeed, Rule 56 is known as a highly useful method for narrowing the issues for trial.

*Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014). Where appropriate, a grant of summary judgment should "include a finding of abandonment of undefended claims or defenses." *Id.* at 198.

Applying *Jackson*, the Court holds that Curry abandoned his cause of action under the Vermont Constitution as well as his tort claims of assault and battery and intentional infliction of emotional distress. Defendants explicitly moved for summary judgment on each of these claims, ECF No. 52 at 17–21, and Curry did not address any of the claims in his briefing.[3] *See, e.g.,*

---

[3] The closest Curry comes to mentioning the other claims is at the end of his facts section, in which he discusses the lack of a "requisite reasonable suspicion of criminal conduct by plaintiff" and says that "[a]bsent that link, all of the defendants' actions taken against plaintiff on the evening of October 6th and the early morning of October 7th are without

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 144 (2d Cir. 2016) (finding that where one party moved for summary judgment on all claims, and the responding party opposed the motion with respect to all but one type of claim, it was proper to infer from the failure to mention those claims that they were abandoned).

### Conclusion

For the aforementioned reasons, the Court **grants** Defendants' Motion for Summary Judgment (ECF No. 52). The Court also **grants** Defendants' Motion to Strike Statement of Undisputed Material Facts to Response in Support of Motion (ECF No. 69), and **denies** as moot Defendants' Motion to Compel Plaintiff to Respond to Discovery (ECF No. 57).


DATED at Burlington, in the District of Vermont, this 22nd day of March, 2021.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

---

legal basis undermining defendants' claims that their assault, batteries and seizure of plaintiff, his vehicle and his property were lawful." ECF 65 at 3-4. This one vague sentence is not enough to keep the tort claims alive.